HILL v. TROEGERLITH TILE CO.   (No. 7533.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

1. CORPORATIONS ☞407—ISSUANCE OF STOCK—PAYMENT FOR PROCURING LOAN —AUTHORIZATION.

A corporation's agreement, contemplating the issue of treasury stock as a commission to one bringing about a purchase of treasury stock by any third party, required a vote of the board of directors to authorize it; the treasurer having no implied authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1615–1619; Dec. Dig. ☞407.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CORPORATIONS ⊜⇒308—ISSUANCE OF STOCK AS COMMISSION FOR PROCURING INVESTMENT—MAKING OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action against a corporation on its alleged agreement to give 200 shares of stock to the plaintiff if he procured a third party to invest in the defendant, evidence *held* not to sustain a finding that the president of the corporation ever made, assented to, or ratified any such agreement by which either he or the company was to pay the stock in return for an investment in cash or a purchase of its stock by a third person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. ⊜⇒308.]

3. CORPORATIONS ⊜⇒308—ISSUANCE OF STOCK AS COMMISSION FOR PROCURING INVESTMENT—PERFORMANCE OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action against a corporation on its alleged agreement to give 200 shares of stock to the plaintiff if he procured a third party to invest in the defendant, evidence *held* insufficient to sustain a finding that an investment was brought about by the plaintiff, or to satisfy his burden of proof on the point.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. ⊜⇒308.]

4. CORPORATIONS ⊜⇒308—ISSUANCE OF STOCK AS COMMISSION—VERDICT—SUFFICIENCY OF EVIDENCE.

In an action against a corporation for breach of its alleged agreement to give 200 shares of stock to the plaintiff if he procured a third party to invest money in the defendant, evidence *held* insufficient to support a verdict for $2,000.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. ⊜⇒308.]

Appeal from Trial Term, New York County.

Action by George P. Hill against the Troegerlith Tile Company. From judgment for the plaintiff, and from an order denying its motion for new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Arnold L. Davis, of New York City, for appellant.
Robert H. Charlton, of Brooklyn, for respondent.

DOWLING, J. The plaintiff claims to have been employed originally by John K. Kellogg, treasurer of the John F. Troeger Sons Company (now known as the Troegerlith Tile Company), to obtain from $5,000 to $10,000 cash capital to enable said company to continue its business; it then being in desperate straits for money. He alleges that Kellogg said that he would see that plaintiff was compensated by a commission, which he later fixed at 200 shares of the company's stock. Plaintiff testified that he brought various persons to see Kellogg, including Benjamin T. B. Hyde, whom he claims to have first met at the latter's office, in November, 1911, and whom he induced to accompany him to the office of the defendant company, where they met John F. Troeger, the president thereof, and Kellogg, its treasurer. A conversation followed between all four, after which they went over to Brooklyn to the company's plant, to see how the material which

they were manufacturing was made, and thereafter visited some places in Brooklyn where its tiling was in use. ·Plaintiff claimed that a meeting was held later in the office of the company, when arrangements were discussed under which Hyde was to become the company's general manager, and was to contribute $10,000 in cash for stock at $50 a share; the par value being $100. Plaintiff claims that he had another conversation with Troeger in a saloon, when the latter expressed his appreciation of plaintiff's instrumentality in bringing Hyde into the business, and said that he would see that Hill was paid a commission for having done it. In corroboration of his claim, plaintiff produced a letter, dated October 27, 1911, directed to him and signed by the "Troeger Sons Company, John Kensett Kellogg, Treasurer," setting forth the company's financial difficulties and continuing:

"Under the existing circumstances I can say that the company will gladly pay you 200 shares of stock for introducing any party who will invest $10,000 or more in the company, the investor to buy his stock in the company at the rate of not less than $50 per share."

It does not appear that at this time the company had any stock whatever left in its treasury, nor is it shown whose stock was to be turned over to plaintiff in payment for his services under this alleged agreement. As a matter of fact Kellogg had but 20 shares of stock at this time, although plaintiff claims that he had a certificate of 400 shares, or thereabouts, on which he was endeavoring to raise money. There was no evidence offered of any authority given the treasurer to make this agreement on behalf of the company. Plaintiff was sought to be corroborated by one MacGowan, who testified to his presence at repeated interviews between Kellogg, Troeger, and Hill, when they were trying to get from $5,000 to $10,000 for the company, and he heard Kellogg promise plaintiff 200 shares of stock if he got some one to invest the money. He also undertook to corroborate the plaintiff's version of the interview, when it was alleged that Troeger had promised Hill that he would see that the latter would be paid, as Hyde had agreed to put in $10,000 on the basis of $50 a share for his stock. Benjamin T. B. Hyde testified that he had bought the 200 shares of stock of the company at $50 a share, the purchase price being used for the benefit of the company. Upon cross-examination it appeared that the stock which he had bought was the individual stock of John F. Troeger, and that his introduction to Mr. Troeger had been brought about by one Isaac F. Townsend. No effort was made to show by this witness that plaintiff had been the party who had brought about his connection with the transaction.

For the defendant, Isaac F. Townsend (at the time of the trial the vice president and treasurer of the company) testified that plaintiff had spoken to him about the defendant, and introduced him to Kellogg and MacGowan, showing him some samples and saying that they needed capital. Townsend testified that he was the party who had interviewed Hyde, and that, after he found that Hyde was willing to consider the proposition, he arranged a meeting in Kellogg's office, when Hill was to meet Hyde and take him to Troeger's office and introduce him to the latter. Hill did not keep the appointment, and

after waiting a half hour or more Townsend went direct to Troeger, telling him that he represented Hyde. The witness accompanied Troeger to Hyde's office, the three alone being present, and the same three visited defendant's factory in Brooklyn. At none of these interviews was Hill present. Called for the defense, Hyde testified that he had met Hill but once, and that his introduction to Troeger came through Townsend, and not through Hill; also that he had never purchased any stock from the corporation, but from Troeger individually. He was emphatic in his denial of plaintiff's testimony that he had been introduced to him by Townsend at Hyde's office. John F. Troeger, formerly president of defendant, testified that Kellogg was trying to buy out half of the witness' interest in the company for $10,000, but denied that he knew anything about Hill's alleged activities in trying to procure capital until he was about to visit Hyde's office. He denied positively ever having promised to pay the plaintiff any commission whatever, or having in any way referred to his alleged efforts to secure capital for the company. On November 20, 1911, although plaintiff claimed that he had a binding contract made with Kellogg on October 27th preceding, by which he was to receive 200 shares of stock, he wrote a letter to the company advising them that he would take legal steps to protect his interests "in stock and cash commissions."

[1-4] We deem it unnecessary to discuss at further length the evidence in the case, which is so contradictory as to be irreconcilable. No effort is made to show any authority upon the part of the treasurer for the making of this very unusual agreement, which, if it contemplated issuing treasury stock as a commission on a purchase by any third party of the company's treasury stock, clearly required a vote of the board of directors to warrant it. There is no proof that the company ever authorized the sale of its treasury stock (if it had any left) at less than par. There is no implied authority upon the part of a treasurer of a corporation to make any such unusual agreement as the one in question. The proof shows that the company had no treasury stock for sale, the entire capital having been issued. Viewing the contract as one for the sale of part of Troeger's stock to secure $10,000 for the needs of the company, we believe the finding that Troeger ever made, assented to, or ratified any agreement by which either he or the company was to pay 200 shares of stock, in return for an investment of cash in the company's affairs or a purchase of its stock, is against the weight of evidence. We also believe that the finding that Hyde's investment in the defendant company and the purchase of Troeger's stock by him for $10,000 were brought about by the plaintiff's efforts is against the weight of evidence, and that plaintiff has failed to sustain the burden upon him of showing that he procured Hyde as such purchaser. Furthermore, the verdict in the sum of $2,000 is clearly a compromise one, and is without any evidence to support it. If the plaintiff had such an agreement as he claims, then the value of the 200 shares of stock which he was to receive, based on Hyde's testimony as to the price then paid by him, was $10,000. The only other testimony as to the value of this stock (which, of course, has no market price) would indicate that the stock was valueless. Plaintiff offered

no proof as to the value of his services, so that there is no basis in the record for this recovery.

The judgment and order appealed from will be reversed, and complaint dismissed, with costs to the appellant. Settle order on notice. All concur.